Kevin E. O'Malley (SBN 006420)
Glen Hallman (SBN 005888)
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Email: keo@gknet.com
Email: gh@gknet.com
*Attorneys for Defendants American National Insurance Co.*

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

DILLON REAL ESTATE CO., INC., a Kansas corporation; and SMITH'S FOOD & DRUG CENTERS, INC., an Ohio Corporation,

Plaintiffs,

vs.

AMERICAN NATIONAL INSURANCE CO., a Texas corporation; and DOLLAR TREE STORES, INC., a Virginia corporation,

Defendants.

No. CIV 08-1508-PHX-FJM

**ANICO'S TRIAL MEMORANDUM OF LAW**

Pursuant to this Court's Rule 16 Scheduling Order, Defendant American National Insurance Company ("ANICO") submits the following Trial Memorandum.

/ / /

/ / /

**A. PLAINTIFFS' DAMAGES CLAIMS ARE BASED ON ASSUMPTIONS THAT ARE CONTRARY TO LAW.**

Plaintiffs' damages expert, David Knopf, bases his damages calculations on the assumption that Dollar Tree's sales of what Plaintiffs consider to be "groceries" are, in their entirety, dollar-for-dollar, lost sales by Plaintiffs. He makes this assumption despite having no facts whatsoever to support it. To quote from Mr. Knopf's rebuttal report: "The calculated amount of grocery sales earned by the Dollar Tree store is a reasonable estimate or approximation of the lost grocery sales suffered by the Fry's store." Rebuttal Report of David A. Knopf, April 21, 2009.

Arizona requires that damages claims be proved with "reasonable certainty." *E.g. Rancho Pescado, Inc. v. Northwestern Mutual Life Insurance Co.*, 140 Ariz. 174, 184, 680 P.2d 1235, 1245 (App. 1948). Simply, there is no "reasonable certainty" that each and every sale by Dollar Tree of what Plaintiffs consider to be "groceries" would have otherwise been a sale of groceries by the Fry's store.

Courts have repeatedly held that such overreaching lost profits calculations fail as a matter of law. An example is *Saks Fifth Avenue, Inc. v. James, Ltd.*, 630 S.E.2d 304 (Va. 2006), in which a business (James) sued its former at-will employee (Thompson) who left to work for a competitor (Saks), taking with him certain allegedly confidential customer information. James (like McKesson here) asserted claims for breach of fiduciary duty, interference with contractual and prospective business relations, and violations of the Uniform Trade Secrets Act. To support its claim of lost profits, James

offered expert testimony of lost profits based on a "but for" analysis, using the sales that the Thompson would presumably have made for James if he had not left. The Supreme Court of Virginia reversed and directed entry of judgment in Thompson's favor, holding that the expert's opinion should have been stricken because he did not consider anything regarding the particular customers in question, and did not provide a sufficient basis on which lost profits could be awarded:

> Rather than being connected to Thompson's employment at Saks, solicitation of James' customers, or removal of James' confidential information, Dubinsky's calculation of damages focuses solely on a "but-for" model of what James' profits would have been had Thompson remained employed there. . . Having neglected to show that its lost profits corresponded to the Defendants' wrongful conduct, James failed to show the necessary factor of proximate causation and thus did not carry its necessary burden of proof as to damages.

*Id*. at 312.

Another case on point is *Emerson Electric Co. v. Rogers*, 2006 WL 212211 (E.D.Mo. January 27, 2006). There, the defendant was a sales representative who had signed a confidentiality agreement regarding certain information, and later went to work for a competitor. The plaintiff, his ex-employer, sued for breach of contract and misappropriation of trade secrets, alleging in part that the sales representative had kept and failed to return certain confidential information which he then used to solicit customers. In support of its lost profits claim, the plaintiff offered two expert damage

calculations. The first assumed that the plaintiff's drop in sales after the employee's departure were wholly attributable to unfair competition. The second (unjust enrichment) assumed that all sales made by the defendants after the employee's departure from the plaintiff were attributable to use of trade secret information. Rejecting both theories, the court granted summary judgment for the defendant, holding that the expert testimony was insufficient on both theories because it was based on the assumption that all losses were the result of some wrongful conduct, and did not give the jury a non-speculative basis for calculating an alternative figure based on anything other than an "all or nothing" theory:

> Plaintiff's evidence regarding its damages is insufficient to meet its burden to avoid summary judgment as to both the breach of contract claim and the trade secrets claim because the evidence put forth by Plaintiff in support of its damages fails to provide a sufficient basis from which a damages calculation can be determined with any degree of reasonable certainty. With regard to the evidence that Plaintiff's sales have decreased in the Territory, Plaintiff appears to contend that the entire $470,000 decrease in sales is attributable to unfair competition from Defendants. While the evidence can support a claim that Plaintiff's sales have decreased in the Territory, this evidence alone is far from enough to support a reasonably certain damages calculation. A theory that one hundred percent of the drop in sales is attributable to Defendants' conduct fails to take into account numerous other factors which may have contributed to the decline in sales. . . . Moreover, even if Plaintiff is contending that only some portion of this decrease in sales is attributable to Defendants' actions, its evidence

> is insufficient because a jury would have no basis for determining what portion of the decrease might reasonably be attributable to Defendants' actions. This would force the jury to speculate as to the amount of damages, if any, to which Plaintiff is entitled. In short, Plaintiff provides no basis from which the jury can make a reasonable calculation as to what portion, if any, of the loss of profits is attributable to Defendants' conduct, making its evidence on this point insufficient.
>
> . . .

*Id*. at *4-5.

*Saks* and *Emerson* are but two of the many cases which stand for a commonsense proposition: the requirement of reasonable certainty in lost profits calculations cannot be met by invoking a blanket assumption that every sale to every customer was somehow the result of illegal conduct. For other recent cases, *see Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, 2003 WL 22251312, at *8 (S.D.N.Y. Sep 30, 2003) (slip op.) (plaintiff's "unsupported assumption of causation and supposition that all of its losses we caused by defendants' allegedly unlawful conduct" was "fatal to its claim"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F.Supp.2d 1067, 1077 (N.D. Cal. 2005) (expert testimony that did not tie damage figure to specific acts of trade secret misappropriation did "not provide a reasonable basis for the jury to apportion damages"); *3M Innovative Properties Co. v. Dupont Dow Elastomers,* 361 F. Supp. 2d 958, 973 (D. Minn. 2005) (granting summary judgment on false advertising and deceptive trade practices claims where expert report "simply calculates damages after assuming that the

false advertising caused Dyneon's lost profits"; "Dyneon has not accounted for customer purchasing decisions that were made for reasons other than the challenged advertising.")

The rationale of these cases applies with particular force here, where there are a host of alternative explanations, such as:

- It is simply common sense that no one regularly does "grocery" shopping at a dollar store.
- Many of Dollar Tree's customers surely normally do their regular grocery shopping at other nearby grocery stores.
- Many Dollar Tree customers have almost certainly shopped at the adjacent Fry's store either before or after their visit to Dollar Tree.
- Many of those customers might not have shopped at the Fry's store but for the fact that it is adjacent to the Dollar Tree store, and thus the presence of the Dollar Tree store may well have *increased* sales at the Fry's store.

The bottom line is Plaintiffs have simply assumed causation, and have not shown any causal link between a sale by the Dollar Tree with a lost sale at the Fry's. Plaintiffs' "all or nothing" calculation provides no basis on which a jury on which a jury can calculate lost profits with reasonable certainty based on the assessment of the actual evidence in this case. Simply put, Fry's chose to overreach with its damages theory, and the resulting opinion is useless. Fed. R. Evid. 701 (expert testimony must be helpful to the jury); *see also* Brooke Group Inc. v. Brown & Wilson Tobacco Corp., 509 U.S. 209, 242 (1993) ("when an expert opinion is not supported by sufficient facts to validate it in

the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

**B. NO INJUNCTION CAN BE ISSUED ORDERING ANICO TO SOMEHOW PREVENT DOLLAR TREE FROM SELLING "GROCERIES."**

Plaintiffs seek an injunction requiring ANICO to do something it has no power to do: somehow prevent Dollar Tree from selling what Plaintiffs consider to be "groceries."

The Lease Agreement between ANICO and Dollar Tree provides that it is "permitted use" to sell "general merchandise including, but not limited to . . . household supplies, cleaning supplies, gift wrap, greeting cards, party supplies, health and beauty supplies, novelty candy and snacks and other food items."

Dollar Tree is not in breach of this provision, or any other provision of its Lease. Thus ANICO has no legal right or ability to somehow stop Dollar Tree, a party against whom neither ANICO nor Plaintiffs has any cognizable legal claims, from selling these items.

Courts have addressed similar situations where an injunction is sought to force a lessor to breach a lease with which the lessee is compliant when that lease violates a prior lease with another lessee. In *Skaggs v. Jensen*, 484 P.2d 728 (*Id.* 1971), an appliance store (original lessee) entered into a lease agreement with the owner of a shopping center (lessors) containing a restrictive provision prohibiting lessors from renting space in the shopping center to any other party engaged in the sale of major appliances. *Id.* at 728. Nine years after the original lease was signed, lessors entered into a lease with Sears

Roebuck Co. (subsequent lessee), which also sold appliances. *Id.* at 729. Thereafter, the original lessee filed suit against the lessor and the subsequent lessee, seeking damages and an injunction against both the lessor and the subsequent lessee. *Id.*

The trial court granted summary judgment both in favor of the subsequent lessee on the basis that it was not a party to the original lessee-lessor restrictive agreement, and in favor of the lessor on the basis that granting an injunction against the lessor would work an injustice against the subsequent lessee, an innocent party. *Id.* In affirming the trial court's decision, the Idaho Supreme Court held that the trial court "was correct in its determination not to grant this relief since the granting of this injunction would in effect enforce the covenant against the subsequent lessee . . . , against whom it is not enforceable."

In *Meredith Hardware, Inc. v. Belknap Realty Trust*, 369 A.2d 204 (N.H. 1977), a hardware store (original lessee) leased space in a shopping center pursuant to an agreement whereby the lessor agreed that no other hardware store would be operated by other tenants in the shopping center. Two years later, the lessor entered into a lease agreement with an automotive and sporting goods store (subsequent lessor), which sold several items that could also be purchased at the original lessee's store. *Id.* at 205-06. The trial court approved a special master's recommendations to enjoin both the subsequent lessee and the lessor, respectively, from selling and allowing to be sold items that were also sold by the original lessee. *Id.* at 206. In reversing the trial court's decision, the New Hampshire Supreme Court held:

> In determining whether the issuance of this injunction was proper, we need not decide whether [the subsequent lessee's] operations constitute a violation of the restrictive covenant against competition in the [original lessee's] lease. The law is clear that the [original lessee] is not entitled to injunctive relief against the subsequent lessee where the subsequent lessee, Mr. Wiener in this case, is not violating the terms of his own lease and had no actual or constructive notice of the restriction imposed upon his premises by the covenant in the [original lessee's] lease.

*Id.* at 206, 208 (emphasis added).

Likewise, in *Liza Danielle, Inc. v. Shoes R US*, 408 So. 2d 735 (Fla. App. 1982), the court held:

> Perhaps the most compelling reason for our conclusion that it was error to grant an injunction under the facts of this case is the harsh effect of this remedy upon Danielle, who, the proofs strongly suggest, may be characterized as an innocent subsequent lessee without notice of Jamko's exclusive. The obvious inequity of forcing Danielle to close down its business, which had been operating for one year at the time of trial, is borne out by cases from several jurisdictions which have held that enforcement of an exclusive clause in a commercial lease by injunction is improper where it would operate harshly against an innocent third-party without notice: [(citations)]. The legal basis for the result in these cases is found in the equitable principle of balancing the relative conveniences of the parties. The rule, as stated in 29 Fla.Jur.2d, Injunctions s 23 at 676, is that: equity will not require by injunction the performance of an act

where the harm to the person coerced is wholly disproportionate to the benefit to the other party, or, indeed, when greater injury and inconvenience will result to the defendant from an injunction than will be caused to the plaintiff by its refusal.

In applying this rule to the facts of the instant case, the nature of the injunction entered against Danielle is of some significance. Danielle was required to cease operating its shoe store at the location leased from Moriber, thus the injunction against Danielle has the characteristics of a mandatory injunction, i.e., one which "goes beyond a mere restraint and commands acts to be done or undone." 29 Fla.Jur.2d, Injunctions s 6 at 659. It has been stated that "(i)n view of the drastic character of mandatory injunctions, the rule about balancing the relative conveniences of the parties applies with special force where mandatory injunctive relief is sought." 29 Fla.Jur.2d, Injunctions s 24 at 676-77. Because the record reflects a total absence of consideration of the effect of entry of the injunction against Danielle, we conclude that this stringent requirement of balancing the relative conveniences of the parties where mandatory relief is concerned has not been met. The trial court committed reversible error in enjoining Danielle's business operation under the circumstances presented. And since the only relief sought by plaintiff against Danielle was injunctive in nature, judgment should be entered on remand against the plaintiff and in favor of Danielle, and Danielle should further be allowed to pursue its cross-claim for damages against appellant Moriber. Moreover, since the effect of upholding the injunction against the lessor, Moriber, would be to enforce it against the subsequent lessee,

> Danielle, against whom it is not enforceable, the injunction entered against Moriber is improper and must likewise be reversed. [1]

*See also Shoe Town (NY), Inc. v. Indep. Props. Co.*, 89 A.D. 2d 674, 453 N.Y.S. 2d 778 (N.Y. App. 1982) ("Accordingly, summary judgment dismissing the complaint must be granted to [the subsequent lessee], and with [the subsequent lessee] no longer a party, plaintiff is not entitled to injunctive relief affecting [the subsequent lessee's] operation of its store.").

Because Dollar Tree is not in breach of its lease agreement with ANICO, an injunction purporting to require ANICO to do something it has no power to do is not appropriate. This is especially true since contract damages to Fry's (if any) would provide Fry's with a complete remedy at law.

## C. WAIVER AND ESTOPPEL ARE JURY QUESTIONS.

Despite this Court's ruling on Plaintiffs' summary judgment motion that questions of fact existed with regard to ANICO's waiver and estoppel defenses, Plaintiffs are taking the remarkable position that these factual questions are not for the jury to consider. Plaintiffs are flatly wrong as a matter of law.

As this Court's ruling recognized, in this diversity case Arizona law governing waiver and estoppel apply. Arizona law is clear that such questions are jury issues, and

---

[1] The Liza Danielle case also has a helpful quote on the damages issue: "However, Jamko's failure to prove its claim for legal damages as against its lessor, Moriber, may not be equated with inadequacy of its remedy at law or irreparableness of its injury, since it is clear from the record that the failure was due not to the impossibility of making such a determination, but rather to the minimal and insufficient effort made by plaintiff to prove its damages." 408 So.2d. at 739.

an abundance of Arizona and federal cases have so recognized.

"Typically, waiver is a 'question of fact.'" *City of Phoenix v. Fields*, 219 Ariz. 568, 575, 201 P.3d 529, 536 (2009); *see also Goglia v. Bodnar*, 156 Ariz. 12, 19, 749 P.2d 921, 928 (App. 1987) ("Whether a right has been waived is a question of fact for the trial court."); *Concannon v. Yewell*, 16 Ariz. App. 320, 321, 493 P.2d 122, 123 (1972) ("Waiver need not be expressed but may be inferred from conduct and is therefore a question of fact to be determined by the trial court"); *Chaney Bldg. Co. v. Sunnyside School Dist. No. 12*, 147 Ariz. 270, 273, 709 P.2d 904, 907 (App. 1985) ("Questions of . . . waiver are for the trier of fact."); *Truck Ins. Exchange v. Hale*, 95 Ariz. 76, 82, 386 P.2d 846, 850 (1963) ("In general the question of waiver of proof of loss is a jury question . . . ."). *cf. Jones v. Cochise County*, 218 Ariz. 372, 380, 187 P.3d 97, 105 (App. 2008) (finding that although "Arizona courts have held waiver is a question of fact to be determined by the trier of fact, when "the facts relating to waiver are uncontested . . ., and are wholly unrelated to the underlying facts of the claim," waiver can be decided as a matter of law.").

Similarly, "questions of estoppel, including reasonable reliance, are fact-intensive inquiries." *John C. Lincoln Hosp. and Health Corp. v. Maricopa County*, 208 Ariz. 532, 537, 96 P.3d 530, 535 (App. 2004); *Cook v. Great W. Bank & Trust*, 141 Ariz. 80, 85, 685 P.2d 145, 150 (App. 1984) ("Estoppel . . . is generally a question of fact."); *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 196, 888 P.2d 1375, 1383 (App. 1994) (stating that estoppel is a question of fact for the jury to decide).

The same is true in Federal Courts. *Albert v. Joralemon*, 271 F.2d 236, 240 (9th Cir. 1959) ("Waiver may be inferred from conduct, and is a question of fact."); *Cox v. English-American Underwriters*, 245 F.2d 330, 332 (9th Cir. 1957) ("The opinion of the trial court indicates that he decided as a matter of law that there was no waiver. However, this question is one of fact, not of law."); *L.K. Comstock & Co., Inc. v. United Engineers & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989) ("The question of waiver of a contractual right is also a question of fact . . . ."). *First Interstate Bank of Arizona, N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) ("We hold that the district court correctly treated the issue of waiver as a fact question for the jury . . . ."); *Phoenix Tempe Stone Co. v. De Waard*, 20 F.2d 757, 760 (9th Cir. 1927) ("The contention assumes as a conclusion of law that there was a waiver. To this it is to be said that whether in any case there has been a waiver is generally a question of fact, and the sufficiency of the evidence to establish it is for the jury."); *Dominguez v. BCW, Inc.*, 99 F.Supp.2d 1155, 1161 (D. Ariz. 2000) ("[W]hether these facts establish sufficient ability to understand the waiver is a jury question.").

"Whether estoppel is justified in a given case is a question of fact." *U.S. v. Garan*, 12 F.3d 858, 860 (9th Cir. 1993) (applying California law); *Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co.*, 795 F.2d 1147 (9th Cir. 1986) (affirming district court's denial of directed verdict on promissory estoppel claim because such a claim generally presents a question of fact); *Merchant Transaction Systems, Inc. v. Nelcela, Inc.*, 2009 WL 723001, 18 (D. Ariz. 2009) ("The parties have already engaged in discovery on the issue

of the statute of limitations, and the Court has ruled that the issue of whether equitable estoppel acts to bar Lexcel's infringement claim involves questions of fact reserved for the jury in Phase II."); *Sawyer v. Sonoma County*, 719 F.2d 1001, 1006 (9th Cir. 1983) ("Generally, the existence of estoppel is a question for the trier of fact."); *Belsea v. Tindall*, 190 F. 440, 446 (9th Cir. 1911) ("If there was any evidence tending to establish the defense of estoppel, the question was for the jury."); *Aetna Cas. & Sur. Co. v. Kellogg*, 856 F. Supp. 25, 33 (D.N.H. 1994) ("The remaining arguments made by defendant in its motion are equally frivolous. For example, defendant's attempt to obtain summary judgment on Counts I and III by asserting the defense of estoppel, the existence of which is a question for the jury, was not warranted by existing law.")

Evidence regarding waiver and estoppel is admissible at trial.

Respectfully submitted this 23rd day of October, 2009.

**GALLAGHER & KENNEDY, P.A.**

By: /s/ Glen Hallman
Kevin E. O'Malley
Glen Hallman
2575 East Camelback Road
Phoenix, Arizona 85016-9225
*Attorneys for Defendant American National Insurance Co.*

***Original of the foregoing was e-filed this 23rd day of October, 2009.***

/ / /

/ / /

***COPY of the foregoing mailed this 23rd day of October, 2009 to:***

The Honorable Frederick J. Martone
UNITED STATES DISTRICT COURT
Sandra Day O'Connor US Courthouse, Suite 526
401 West Washington Street, SPC 62
Phoenix, AZ 85003-2158

Andrew F. Halaby
Jacob A. Hecker
SNELL & WILMER, LLP
One Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
*Attorneys for Plaintiff*

Randy Papetti
LEWIS & ROCA, LLP
40 North Central Avenue
Phoenix, AZ 85004-4429
*Attorneys for Dollar Tree Stores, Inc.*

By: /s/ Kim Haggard

2254342 / 10877-15