1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9              **FOR THE DISTRICT OF ARIZONA**
10

| | |
|---|---|
| 11 DILLON REAL ESTATE CO., INC., a Kansas corporation; and SMITH'S FOOD & DRUG CENTERS, INC., an Ohio Corporation, | No. CIV 08-1508-PHX-FJM |
| Plaintiffs, | **JOINT PROPOSED PRETRIAL ORDER** |
| v. | |
| AMERICAN NATIONAL INSURANCE CO., a Texas corporation; and DOLLAR TREE STORES, INC., a Virginia corporation,, | |
| Defendants. | |

22          In accordance with the Court's Rule 16 Scheduling Order [Dkt. #25], the following

23    is the Joint Proposed Pretrial Order to be considered at the Final Pretrial Conference set

24    for Friday, October 30, 2009, at 3:00 p.m. before Judge Martone.

25
26
27
28

1. **TRIAL COUNSEL FOR THE PARTIES**[1]

    A.    Counsel for Plaintiffs Dillon Real Estate Co., Inc. ("Dillon") and Smith's Food & Drug Centers, Inc. ("SFDC"):

> Andrew F. Halaby
> Jacob A. Hecker
> One Arizona Center
> 400 E. Van Buren
> Phoenix, AZ 85004-2202
> Telephone:  (602) 382-6000
> Facsimile:   (602) 382-6070

    B.    Counsel for Defendant American National Insurance Co. ("ANICO"):

> Kevin E. O'Malley
> Glen Hallman
> 2575 East Camelback Road, Suite 1100
> Phoenix, AZ 85016-9225
> Telephone:  (602) 530-8000
> Facsimile:   (602) 530-8500

2. **STATEMENT OF JURISDICTION/VENUE**

    Plaintiffs filed this case in Maricopa County Superior Court on July 18, 2008, and Defendants removed it to this Court on August 18, 2008.  This Court has jurisdiction under 28 U.S.C. § 1441 in light of 28 U.S.C. § 1332.  Plaintiff Dillon is a Kansas corporation with its principal place of business in Hutchinson, Kansas.  Plaintiff SFDC is an Ohio corporation with its principal place of business in Salt Lake City, Utah.  Defendant ANICO is a Texas corporation with its principal place of business in

---

[1] The claims and defenses addressed in this Joint Proposed Pretrial Order and being tried at the upcoming trial are between Plaintiffs and ANICO, and are not between those parties and Dollar Tree, which received summary judgment in its favor on July 17, 2009 [Dkt. #125].  Dollar Tree understands, however, that Plaintiffs are seeking an injunction against ANICO that would require ANICO to take steps to stop Dollar Tree from selling groceries or else eject Dollar Tree.  Accordingly, unless the Court directs otherwise, Dollar Tree will have no counsel participating in the trial itself, and Dollar Tree has not listed any witnesses or exhibits with respect to the trial.  If argument to the Court is made at, or subsequent to, the conclusion of trial regarding the form or scope of any injunction against ANICO, Dollar Tree wishes to be heard through its counsel of record in this case.

1   Galveston, Texas.  The parties agree that the matter in controversy exceeds $75,000,

2   exclusive of interest and costs.

3   **3.       NATURE OF ACTION**[2]

4           A.      Plaintiffs' Nature of Action[3]

5           This is a case in which Plaintiffs seek a permanent injunction and money damages

6   for a violation of a Declaration of Easements, Covenants and Restrictions ("Declaration")

7   which contains a restriction ("Restriction") on sales of groceries by anyone in the

8   Heatherwood Plaza Shopping Center ("Shopping Center") but SFDC (doing business as

9   "Fry's").  The Shopping Center is located at 59th Avenue and Thunderbird in Glendale,

10  Arizona.

11          Plaintiffs contend that ANICO, as landlord, allows Dollar Tree, one of ANICO's

12  tenants at the Shopping Center, to sell grocery items in violation of the Restriction.

13  Specifically, Plaintiffs believe the breach of the Restriction, and thus the Declaration,

14  entitles Plaintiffs to both a permanent injunction barring ANICO from permitting Dollar

15  Tree from continuing to sell grocery items, as well as monetary damages for the past and

16  continuing breach of the Restriction by ANICO.

17

18  [2] Plaintiffs and ANICO negotiated in good faith regarding a joint Nature of Action, but

19  ultimately could not agree and have submitted separate one page Nature of Actions.

20  [3] Plaintiffs originally sued Dollar Tree in this action as well as ANICO.  In a summary
    judgment order dated July 17, 2009 [Dkt. #125], the Court granted Dollar Tree summary
21  judgment, holding it was not bound by the Restriction.   Plaintiffs preserve, and do not
    waive, their position that Plaintiffs had the right to sue Dollar Tree directly for violating
22  the Restriction, but did not move for reconsideration of Dkt. #125.  Plaintiffs note that an
    injunction barring ANICO from permitting Dollar Tree to sell or suffering Dollar Tree
23  selling groceries in violation of the Restriction will have the same net effect as an
    injunction against Dollar Tree directly, since ANICO is Dollar Tree's landlord and has the
24  power, under compulsion of this Court, to eject Dollar Tree from the leasehold.  Dollar
    Tree takes the position that Dkt. #125 leaves it with no issues to try in this case, which
25  leaves the Court with a trial between Plaintiffs and ANICO.  As the Court noted in
    footnote 3 of Dkt. #136, however, "Dollar Tree acknowledged the [D]eclaration in its
26  lease and it had an opportunity to be heard in this case."

27

28

1    In its summary judgment order dated September 25, 2009 [Dkt. #136], the Court

2    held that, but for the existence of genuine issues of material fact regarding ANICO's

3    affirmative defenses of equitable estoppel and waiver (specifically relating to ANICO's

4    arguments based on Plaintiffs' failure to complain to ANICO about Osco's prior product

5    sales in the Dollar Tree space at the Shopping Center and Plaintiffs' communications with

6    ANICO in connection with Dollar Tree's entry into the Shopping Center which referred to

7    the Restriction by its numerical paragraph 1.4 of the Declaration, as well as the "food

8    restriction"), Plaintiffs were entitled to partial summary judgment, including a permanent

9    injunction barring ANICO from permitting or suffering the sale of groceries at the

10   Shopping Center.  The Court also held Plaintiffs have met their burden regarding their

11   prima facie case, and found the following issues established under Fed. R. Civ. P. 56(d):

12   (1) the declaration prohibits ANICO from permitting Dollar Tree to sell groceries; (2) the

13   term groceries, as used in the declaration, includes food and non-food household supplies

14   (subject to ANICO's waiver and estoppel defenses); and (3) ANICO's laches defense is

15   foreclosed [Dkt. #136].  The net effect of these rulings is that the only issues that remain

16   to be tried are Plaintiffs' damages and ANICO's affirmative defenses of equitable

17   estoppel and waiver.

18          B.      ANICO's Nature of Action

19   This is a case in which Plaintiffs seek a permanent injunction and money damages

20   for a violation of a Declaration of Easements, Covenants and Restrictions ("Declaration")

21   which contains a restriction ("Restriction") on sales of groceries by anyone in the

22   Heatherwood Plaza Shopping Center ("Shopping Center") but SFDC (doing business as

23   "Fry's").  The Shopping Center is located at 59th Avenue and Thunderbird in Glendale,

24   Arizona.

25   As the Court has ruled, Dollar Tree is not bound by the restriction on grocery sales,

26   but rather the restriction only prevented ANICO from permitting Dollar Tree to sell such

27   products.  Thus, Plaintiffs cannot obtain an injunction against Dollar Tree to stop Dollar

28   Tree from selling groceries.  ANICO does not believe it can now directly prevent Dollar

1   Tree from selling any of its current products, because Dollar Tree is currently operating

2   within the terms of its lease with ANICO.

3       Plaintiffs nevertheless contend that ANICO should not have entered into its lease

4   with Dollar Tree and, as a remedy, the Court should issue a permanent injunction

5   requiring ANICO to somehow either eject Dollar Tree as a tenant (notwithstanding its

6   lease) or to stop Dollar Tree from selling any "groceries." Plaintiffs also demand that

7   ANICO pay Plaintiffs damages.  ANICO takes the position that the scope of injunction

8   that Plaintiffs seek is far too broad, not practical and not legally justified, and that

9   Plaintiffs' damages claims are not supported by the evidence.

10      To obtain a permanent injunction, Plaintiffs must prove (1) the existence of the

11  Restriction, (2) that the Restriction runs with the land, and (3) that Defendant's use

12  violates the Restriction.  To obtain damages, Plaintiffs must prove the economic damage

13  that ANICO's violation of the Restriction has caused.  In its summary judgment order

14  dated September 25, 2009 [Dkt. #136], the Court held that, but for the existence of

15  genuine issues of material fact regarding ANICO's affirmative defenses of equitable

16  estoppel and waiver (specifically relating to ANICO's arguments based on Plaintiffs'

17  failure to complain to ANICO about Osco's prior product sales in the Dollar Tree space at

18  the Shopping Center and Plaintiffs' communications with ANICO in connection with

19  Dollar Tree's entry into the Shopping Center which referred to the Restriction by its

20  numerical paragraph 1.4 of the Declaration, as well as the "food restriction"), Plaintiffs

21  were entitled to partial summary judgment.  The Court also held Plaintiffs have met their

22  burden regarding their prima facie case, and found the following issues established under

23  Fed. R. Civ. P. 56(d):  (1) the declaration prohibits ANICO from permitting Dollar Tree to

24  sell groceries; (2) the term groceries, as used in the declaration, includes food and non-

25  food household supplies  (subject to ANICO's waiver and estoppel defenses); and (3)

26  ANICO's laches defense is foreclosed [Dkt. #136].  The net effect of these rulings is that

27  the only issues that remain to be tried are Plaintiffs' damages and ANICO's affirmative

28

1  defenses of equitable estoppel and waiver, and potentially the scope of any injunctive

2  relief.

3      Dollar Tree also cross-claimed against ANICO for indemnity against Plaintiffs'

4  claims.  Given the Court's ruling in Dollar Tree's favor, Dollar Tree and ANICO have

5  agreed to the dismissal of the cross-claim, without prejudice, and Plaintiffs have stated

6  they have no objection to such dismissal.  At the Pretrial Conference, therefore, we ask

7  that the Court enter an order dismissing the cross claim, without prejudice.

8  **4.      <u>STIPULATIONS AND UNDISPUTED FACTS</u>**

9      The Parties agree the following facts are undisputed and conclusively determined

10 as being established in this action:

11     1.      W.M. Grace Development Co. ("Developer") and Dillon owned two

12 adjoining parcels of real property which they developed as the Heatherwood Plaza

13 shopping center in Glendale, Arizona.  On Dillon's parcel, a building for the use of Fry's

14 Food Stores of Arizona, Inc. as a grocery supermarket was to be constructed, and the

15 remainder of the Shopping Center was to be constructed on Developer's parcel.

16     2.      Dillon acquired its parcel of property at Heatherwood Plaza from Developer.

17     3.      Dillon and Developer entered into the Declaration governing Heatherwood

18 Plaza's development on December 17, 1982.

19     4.      The Declaration was entered into to facilitate the development of

20 Heatherwood Plaza and was intended to mutually benefit both Dillon and the Developer,

21 as well as their "respective heirs, successors, assigns, grantees, mortgagees, tenants and

22 subtenants."

23     5.      The Declaration runs with the land.

24     6.      The parties to the Declaration intended to bind their successors and tenants.

25     7.      Section 1.4 of the Declaration contains the following restrictive covenant

26 (the "Restriction"):

27         A prime inducement to Dillon for its purchase of the Dillon
          Parcel from Developer was and is the representation by
28

- 6 -

Developer that Fry's will have the exclusive right to operate a grocery supermarket in the Shopping Center.  Developer covenants and agrees that it shall not permit or suffer the use or operation of any building in the Shopping Center, or any space therein, other than the Fry's Building, for the sale of groceries, package liquor, beer or wine, (provided, however, that Developer or any tenant of Developer may, at its option, sell or cause to be sold package liquor, beer or wine in a drug store operated in the Shopping Center), or for convenience store, meat market, supermarket or similar food purposes, or for a delicatessen or similar food operation larger than 2,000 square feet in size.  Fry's may, at its option, operate a drugstore and pharmacy in the Fry's Building but it shall not have the exclusive right to such uses in the Shopping Center. Developer or any tenant of Developer may, at its option, operate or cause to be operated a drug store in the Shopping Center, provided that (i) it sells only those items typically sold in drug stores in the Phoenix, Arizona, metropolitan area, and (ii) it sells no food items of any kind, other than candy, cookies, soft drinks, juices, nuts and snack items.

8.   The Declaration also provides that

[a]ny Owner may prosecute any proceedings at law or in equity against any person or entity violating or attempting to violate any of the agreements, covenants, conditions, and restrictions [t]herein and either prevent it, him or them from so doing, and to recover damages from or on account of such violation.

9.   SFDC succeeded to Fry's Food Stores of Arizona, Inc.'s position at Heatherwood Plaza following a merger, and is now Dillon's tenant at Heatherwood Plaza.

10.   SFDC operates as a Fry's Food & Drug Store, the anchor store for Heatherwood Plaza.

11.   Dillon and ANICO, Developer's successor-in-interest, now own Heatherwood Plaza.

12.   ANICO, as Developer's successor-in-interest, is bound by the Declaration and Restriction.

13.     The Declaration and Restriction prohibits ANICO from permitting any of its tenants to sell groceries in Heatherwood Plaza.

14.     Dollar Tree leases a space at Heatherwood Plaza from ANICO.

15.     Dollar Tree's lease was entered into in December 2004.

16.     Dollar Tree negotiated for and obtained an exclusive, in its lease with ANICO at Heatherwood Plaza, providing that it would be the sole single price point retail store at Heatherwood Plaza.

17.     Dollar Tree's exclusive further provides that that no occupants would be allowed in the shopping center without Dollar Tree's consent that operated as a "close-out store;" or whose principal business was selling retail merchandise at a single price point, selling gifts, cards, and other party supplies, or selling artificial flowers and picture frames; or that conducted a variety retail operation with the word "Dollar" in their trade name.

18.     Dollar Tree began operating in the Heatherwood Plaza space it leased from ANICO on March 18, 2005.

19.     The Dollar Tree store at Heatherwood Plaza is adjacent to SFDC store operating as Fry's Food & Drug Store.

20.     Dollar Tree sells groceries, including both food items as well as non-food household supplies, at its store at the Shopping Center.

21.     The products sold by Dollar Tree at its Heatherwood Plaza store include food products, pet food and supplies, consumable paper products, other consumable products, personal care/health and beauty products, over-the-counter medicinal products (such as Aleve and aspirin), household supplies, bathroom accessories, household cleaning products, and other general merchandise.

22.     Dollar Tree has sold fresh bread from a bread cart at its Heatherwood Plaza store.

23.

| 3020 HEATHERWOOD PLZ AZ GLE | | | | | |
|---|---|---|---|---|---|
| **Fiscal Year ID** | | 2006 | 2007 | 2008 | |
| Department | Description | Net Sales | Net Sales | Net Sales | |
| 010 Total | Candy | 99,192 | 99,898 | 95,072 | |
| 011 Total | Froz/ Refrig Food | 89 | 1 | 896 | |
| 012 Total | Food | 157,911 | 174,867 | 192,058 | |
| 030 Total | Household Products | 28,276 | 28,238 | 24,627 | |
| 031 Total | Household Consumables | 106,476 | 105,177 | 111,567 | |
| 032 Total | Housewares | 16,111 | 16,774 | 15,452 | |
| 055 Total | HBC- Basic | 65,536 | 62,987 | 68,382 | |
| 080 Total | Pet Supplies | 15,706 | 17,113 | 18,576 | |
| 096 Total | Promotions | 250 | - | - | |
| 450 Total | Halloween Candy | 72 | - | - | |
| Grand Total - groceries | | 489,619 | 505,055 | 526,631 | |
| | | | | | |
| Other Departments | | 731,724 | 750,239 | 719,176 | |
| Net Sales Report Totals | | 1,221,343 | 1,255,294 | 1,245,807 | |

24.     Dollar Tree accepts food stamps at its Heatherwood Plaza store.

25.     As of January 29, 2005, Dollar Tree operated 2,735 stores.

26.     As of January 28, 2006, Dollar Tree operated 2,914 stores.

27.     As of February 3, 2007, Dollar Tree operated 3,219 stores.

28.     As of February 2, 2008, Dollar Tree operated 3,411 stores.

29.     As of January 31, 2009, Dollar Tree operated 3,591 stores.

30.     The Dollar Tree Store at Heatherwood Plaza has a merchandise mix that includes what Dollar Tree refers to as "consumable merchandise," which Dollar Tree defines as candy and food, basic health and beauty care, and household consumables such as paper, plastics and household chemicals and in some stores, frozen and refrigerated food.

31.     Dollar Tree has "increased the mix of consumable merchandise" in some of its stores "in order to increase the traffic in [those] stores."

32.     According to Dollar Tree, consumable merchandise typically leads to more frequent return trips to some of Dollar Tree's stores, resulting in increased sales.

33.     New store openings are one of the primary factors contributing to Dollar Tree's net sales growth.

34.     Dollar Tree "primarily focus[es] on opening new stores in strip shopping centers anchored by mass merchandisers, whose target customers [it] believe[s] to be similar to" Dollar Tree's.

35.     Dollar Tree believes its "optimal store is between 8,000 and 10,000 selling square feet."

36.     The Dollar Tree store in Heatherwood Plaza is between 8,000 and 10,000 selling square feet.

37.     Dollar Tree has added freezers and coolers to some of its stores to increase traffic and transaction size, and therefore increase sales and earnings.

38.     The Dollar Tree store in Heatherwood Plaza has a freezer with individually wrapped ice cream novelties and two coolers containing individual bottles of soda and water.

39.     Dollar Tree's installation of freezers and coolers in some of its stores has caused consumable merchandise to grow as a percentage of Dollar Tree's purchases and sales.

40.     Dollar Tree has expanded consumer payment methods at some of those stores, including food stamps, and believes that doing so has increased both the traffic and the average size of transactions at its stores.

**5.     DISPUTED FACTS**

1.     Whether certain non-household supplies are excluded from the term "groceries?"

2.     Whether Dollar Tree discussed with ANICO methods to enforce its exclusive against other tenants in the Heatherwood Plaza shopping center?

3.     Whether Dollar Tree was aware of the Declaration and the Restriction before it entered into its lease with ANICO?

4.     Whether ANICO was aware of the Declaration and the Restriction before it entered into its lease with Dollar Tree?

5.      Whether Plaintiffs informed ANICO before Dollar Tree opened its Heatherwood Plaza store that Plaintiffs expected Dollar Tree to comply with the Restriction?

6.      Whether Plaintiffs informed Dollar Tree before Dollar Tree opened its Heatherwood Plaza store that Plaintiffs expected Dollar Tree to comply with the Restriction?

7.      Whether in the early 1980s, grocery stores often served the role as the largest and most prominent business in shopping centers such as the Heatherwood Plaza, and building the grocery store was generally the single most expensive and risky endeavor to developing the shopping center?

8.      Whether because of the great amount of cost and risk involved in developing the grocery store, and because other cotenants and developers of shopping centers relied on customer traffic from the grocery store, cotenants and developers would enter into covenants intended to prevent direct competition against the grocery store?

9.      Whether in general, customer traffic at the Heatherwood Plaza shopping center is generated by the Fry's Food & Drug Store, which is the anchor store and the most prominent store in the shopping center?

10.     Whether, the Restriction benefited not only Fry's Food Stores of Arizona, Inc., SFDC's predecessor, and Dillon, by protecting their investment in the grocery store and shopping center, but also the Developer and the public, by enabling the shopping center to be developed in that location?

11.     Whether the addition of freezers and coolers and increase in consumable merchandise in Dollar Tree stores helps drive additional transactions?

12.     Whether ANICO is in violation of the Declaration and Restriction because its tenant, Dollar Tree, is selling groceries in violation of the Restriction?

13.     Whether the space presently occupied by the Dollar Tree was previously occupied by an Osco Drug Store for almost twenty years?

14.     Whether the Osco Drug Store sold a number of consumable items, including food, cosmetics, paper products, bottled water, sodas and the like?

15.     Whether SFDC ever complained to ANICO regarding the products sold by the Osco Drug Store?

16.     During the years of operation of the Osco Drug Store, whether SFDC ever alleged that the products sold in the Osco Drug Store violated the Restriction?

17.     Whether after the Osco Drug Store became vacant, Fry's considered expanding into the space now occupied by Dollar Tree?

18.     Whether Dollar Tree is currently, or has never been, in breach of its Lease Agreement with ANICO?

19.     Whether SFDC has referred to the Restriction as "the food restriction" in written communications to ANICO?

20.     Whether SFDC agrees that certain non-food items sold at the Fry's store are not groceries, as contemplated by the Restriction, including:

- Cosmetics;
- DVDs;
- Fresh flowers;
- Greeting cards;
- Stationary;
- Swimming pool chemicals;
- Individual spools of thread;
- Magazines;
- Books;
- Toys;
- Crayons;
- Charcoal grills;
- Propane gas;
- Coolers;

1      •     Lottery tickets;

2      •     Sunglasses;

3      •     Reading glasses;

4      •     Smoke detectors;

5      •     Automotive products;

6      •     Padlocks;

7      •     Bungee cords;

8      •     Toilet plungers;

9      •     WD 40;

10      •     Coffee mugs;

11      •     Vases;

12      •     Barbeque grill tools;

13      •     Newspapers;

14      •     Duct tape;

15      •     Picture hanging hardware;

16      •     Pliers;

17      •     Screwdrivers;

18      •     Superglue;

19      •     Hosiery;

20      •     Frying pans;

21      •     Baking pans;

22      •     Coffee makers;

23      •     Blenders;

24      •     Toasters;

25      •     Crockpots;

26      •     Non-food seasonal items;

27      •     Irons;

28      •     Goods sold in on-premises bakeries and delicatessens; and

1        •    T-shirts?

2    **6.    WITNESSES**

3        A.    Plaintiffs

4        1.    Dennis E. Barr

5        2.    David A. Knopf

6        3.    Fahmi Hashish

7        4.    Wissam Shtaih

8        5.    Alex Clark

9        6.    Angie Rahney

10       7.    Robert Clark

11       8.    Carol Shipman

12       B.    ANICO

13       1.    Scott Webb

14       2.    John G. Gorman

15   **7.    EXHIBITS**

16       A.    Plaintiffs

17       The following exhibits will likely be used at trial to support Plaintiffs' claims and

18   damages (excluding information used solely for impeachment):

19       1.    Declaration of Easements, Covenants and Restrictions dated December 17,

20   1982 – Bates Nos. FRYS000035-FRYS000059;

21       2.    First Amendment to Declaration of Easements, Covenants and Restrictions

22   dated September 22, 1989 – Bates Nos. FRYS000060-FRYS000069;

23       3.    Photographs taken during the visual inspection of the Dollar Tree Store on

24   December 22, 2008  – Bates Nos. FRYS000118-120; FRYS000124; FRYS000126-127;

25   FRYS000129; FRYS000131; FRYS000143; FRYS000167; FRYS000180; FRYS000192;

26   FRYS000231; FRYS000233; FRYS000248; FRYS000306; FRYS000307; FRYS000332;

27   FRYS000334; FRYS000336; FRYS000366; FRYS000377; FRYS000410; FRYS000415;

28

FRYS000420; FRYS000424; FRYS000430; FRYS000438; FRYS000441; FRYS000445; FRYS000451; FRYS000511; FRYS000513-514; FRYS000520; FRYS000527;

4.      Photographs taken July 30, 2008  – Bates Nos. FRYS000001-FRYS000026;

5.      Dollar Tree Department Sales Performance 2008 YTD for store 3020 – Bates No. DT00446;

6.      Dollar Tree 3020 Heatherwood Plaza Fiscal Year sales data – Bates Nos. DT00447-DT00452;

7.      Dollar Tree selected department and sub-department product types and flows – Bates Nos. DT00453-DT00454;

8.      GoogleMap image of intersection of Thunderbird Road and 59th Avenue – Bates Nos. FRYS000884-FRYS000895;

9.      GoogleEarth images from intersection of Thunderbird Road and 59th Avenue – Bates Nos. FRYS000896-FRYS000897;

10.     Dollar Tree Department Grocery Flow A – DT00455-DT00473;

11.     Dollar Tree store 3020 operations and planning floor plan – Bates No. DT00501;

12.     Store 3020 Total sales sheet, previously identified as Ex. 20;

13.     Dollar Tree, Inc.'s 2005 10-K;

14.     Dollar Tree, Inc.'s 2006 10-K;

15.     Dollar Tree, Inc.'s 2007 10-K;

16.     Dollar Tree, Inc.'s 2008 10-K;

17.     Dollar Tree, Inc.'s 2009 10-K;

18.     Handwritten notes – Bates Nos. FRYS000029;

19.     Dollar Tree Stores, Inc. ("Dollar Tree") Heatherwood Plaza Glendale, Arizona Lease between American National Insurance Company, Inc. ("ANICO") and Dollar Tree – Bates Nos. FRYS000079-FRYS000117;

20.     Dollar Tree Frozen Food & Dairy Best Practices – Bates Nos. DT00474-DT00500;

21.     Email string from D. Barr to A. Clark dated 3/16/2005 – Bates Nos. FRYS000072-FRYS000073;

22.     Email string from D. Barr to S. Webb dated 4/29/2005 – Bates Nos. FRYS000075-FRYS000076;

23.     Letter from K. McKay to ANICO and Dollar Tree dated 8/30/2006 – Bates Nos. FRYS000030-FRYS000031;

24.     Letter from M. Adams to K. McKay dated 9/22/2006 – Bates Nos. FRYS000032-FRYS000033;

25.     Letter from K. McKay to M. Adams dated 9/22/2006 – Bates No. FRYS000034;

26.     Email string from A. Rahney to A. Rahney dated 8/16/2004 – Bates Nos. E000084-E000085;

27.     Email string from S. Webb to A. Clark dated 8/17/2004 – Bates Nos. B000004-B000005;

28.     Email string from D. Torres-Rivas to A. Clark dated 8/9/2004 – Bates Nos. E000086-E000087;

29.     Fax cover sheet and invoice dated 12/23/04 – Bates Nos. B000001-B000002;

30.     Email string from S. Webb to A. Rahney dated 12/14/2004 – Bates Nos. E000068-E000069;

31.     Email from A. Rahney to S. Webb dated 3/17/2005 – Bates No. E000062;

32.     Email string from A. Rahney to A. Clark dated 3/17/2005 – Bates No. E000063;

33.     Email string from A. Rahney to A. Clark dated 3/17/2005 – Bates Nos. E000064-E000065;

34.     Email string from A. Rahney to S. Webb dated 8/18/2005 – Bates Nos. E000057-E000058;

35.     Email from A. Rahney to S. Webb dated 10/04/2005 – Bates No. E000054;

36.   Email from A. Rahney to C. Musick dated 10/4/2005 – Bates Nos. E000055-E000056;

37.   Email string from A. Rahney to S. Webb dated 10/5/2005 – Bates No. E000053;

38.   Email string From A. Rahney and S. Webb dated 2/17/2006 – Bates Nos. E000034-E000037;

39.   Email string from M. Bennett to S. Cole dated 3/2/2006 and attachment – Bates Nos. DT00434-DT00437;

40.   Email string from S. Cole to M. Bennett dated 3/2/2006 – Bates Nos. DT00438-DT00439;

41.   Email from M. Bennett to S. Cole dated 3/8/2006 – Bates No. DT00440;

42.   Email string from S. Webb to A. Rahney dated 9/25/2006 – Bates No. E000030;

43.   Email string from A. Rahney to S. Webb dated 9/29/2006 – Bates Nos. E000028-E000029;

44.   Email string from A. Rahney to S. Webb dated 10/6/2006 – Bates Nos. E000026-E000027;

45.   Email string from A. Rahney to S. Webb dated 6/27/2008 – Bates No. E000025;

46.   Email string from S. Webb to A. Rahney dated 6/30/2008 – Bates No. E000024;

47.   Email string from A. Rahney to S. Webb dated 8/28/2008 – Bates Nos. E000111-E000112;

48.   Email string from S. Webb to A. Rahney dated 8/14/2008 – Bates No. E000019;

49.   Email string from S. Webb to A. Rahney dated 8/19/2008 – Bates No. E000008;

50.    Email string from A. Rahney to S. Webb dated 1/16/2009 – Bates Nos. E000001-E000002;

51.    Email from M. Bennett to S. Webb dated 10/11/04 – Bates No. DT00202;

52.    Draft version 4 lease between Dollar Tree and ANICO – Bates Nos. DT00203-DT00237;

53.    Email string from T. Littler to J. McGuire dated 10/04/2004 – Bates Nos. DT00175-DT00178;

54.    Email string from M. Bennett to S. Webb dated 10/05/2004 – Bates No. DT00195;

55.    Email from S. Webb to A. Rahney dated 10/06/2004 – Bates No. E000078;

56.    Email string from A. Rahney to S. Webb dated 10/06/2004 – Bates Nos. E000076-E000077;

57.    Email string from S. Webb to A. Rahney dated 10/07/2004 – Bates Nos. E000074-E000075;

58.    Defendant ANICO's Response to Plaintiffs' First Set of Requests for Admission  Nos. 5, 8, and 12 dated December 24, 2008;

59.    Dollar Tree's Responses to Plaintiffs' First Set of Requests for Admission Nos. 6, 13 and 16 dated January 9, 2009;

60.    Dollar Tree's Responses to Plaintiffs' Third Set of Requests for Admission No. 19 dated February 20, 2009;

61.    Dollar Tree's Amended Responses to Plaintiffs' Third Set of Requests for Admission No. 21 dated March 3, 2009.

B.    Defendant

The following exhibits will likely be used at trial to support Defendant ANICO's defenses (excluding information used solely for impeachment):

100.    Handwritten note by Scott Webb (AN000046; Deposition Exh 32).

101.    Video  of Dollar Tree (DT001420).

102.    Video of Fry's (DT001419).

- 18 -

1    103.    Plaintiffs' Responses to Dollar Tree's Second Set of Interrogatories

2    (Deposition Exh 63).

3    104.    The 61st Annual Consumer Expenditures Study, reported in the September

4    2008 issue of Progressive Grocer (FRYS000801 – 815).

5    105.    The Grocery Manufacturer's Association Report titled The Food, Beverage,

6    and Consumer Products Industry – Achieving Superior Financial Performance in a

7    Challenging Economy – 2008 (FRYS000816 – 883).

8    106.    David Knopf Expert Report dated 1/5/09 (Depo Exh 79).

9    107.    David Knopf Expert Report dated 2/26/09 (Depo Exh 4/80).

10    108.    David Knopf Rebuttal Report dated 4/21/09 (Depo Exh 81).

11    109.    Fry's financial data (FRYS000655 – 796).

12    110.    Email dated 10/11/04 to Susan Cole from Mari Bennett (DT00278).

13    111.    Email chain dated 6/14 - 6/21/04 between Angie Rahney and  Scott Webb re

14    expansion (E_LR00206 – 208).

15    112.    Email chain between Scott Webb and Angie Rahney (E000033; Deposition

16    Exh 43).

17    113.    Expert Report of John Gorman dated 3/30/09 (Deposition Exh 88).

18    114.    Expert Report of John Gorman dated 2/25/08 (Deposition Exh 87).

19    115.    Exhibit 1 to Gorman's 3/30/09 Report: Fry's Food and Drug Store Sales and

20    EBITDA Store #6 (FRYS000797; GORMAN000032; Deposition Exh 61).

21    116.    Exhibit 2 to Gorman's 3/30/09 Report: Fry's Food and Drug Store #6 Sales

22    by Period (GORMAN000033).

23    117.    Exhibit 3 to Gorman's 3/30/09 Report: Fry's Food and Drug Store #6

24    EBITDA by Period (GORMAN000034).

25    118.    Revenue by Product Category 2004 – 2008 (NAV00077; Deposition Exh

26    83).

27    119.    Expert Report of Gregg Curry dated 3/30/09 (GC000001 – GC000017;

28    Deposition Exh 95).

120.    Fry's website, weekly specials (Deposition Exh 62).

121.    Demonstrative exhibit- List of Non-Groceries Fry's Agrees To.

122.    Email chain between Angie Rahney, Scott Webb, Alex Clark dated 1/15/09 (E000003 – E000004).

123.    Any exhibits listed by Plaintiffs.

**8.    INFORMATION FOR COURT REPORTER**

Notice to Court Reporter to be filed one week before trial (November 2, 2009).


DATED this 23rd day of October, 2009.

APPROVED AS TO FORM AND CONTENT:

**SNELL & WILMER** L.L.P.                    **GALLAGHER & KENNEDY, P.A.**


/s/ Andrew F. Halaby                         /s/ Glen Hallman
Andrew F. Halaby                             Kevin E. O'Malley
Jacob A. Hecker                              Glen Hallman
Attorneys for Dillon Real Estate Co., Inc.   Attorneys for Defendant American
and Smith's Food & Drug Centers, Inc.        National Insurance Co.


THIS JOINT PRETRIAL ORDER IS HEREBY APPROVED ON THIS _____ DAY OF _____, 2009.


_____
Frederick J. Martone
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrations:

Kevin E. O'Malley
Glen Hallman
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
*Attorneys for Defendants American National Insurance Co.*

Randy Papetti
Adele Ponce
LEWIS & ROCA, LLP
40 North Central Avenue
Phoenix, AZ 85004-4429
*Attorneys for Dollar Tree Stores, Inc.*

/s/ Alison Mathers

10663290